United States District Court
Southern District of Texas
**ENTERED**
April 19, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FRANK MARTINEZ, | § | |
| (TDCJ # 02307112), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-23-768 |
| | § | |
| WARDEN RODGER E. BOWERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Frank Martinez, representing himself and proceeding without prepaying the filing fee, was a state inmate incarcerated in the Texas Department of Criminal Justice—Correctional Institutions Division. While he was in TDCJ custody, Martinez sued Warden Rodger E. Bowers, Sergeant Elijah L. Harris, Sergeant Will Hudson, Sergeant Shamus M. Shinette, and Lieutenant Christina M. Holloway under 42 U.S.C. § 1983, alleging that Sergeants Harris and Hudson used excessive force against him, that Sergeant Shinette failed to intervene when she saw the detention officers using excessive force, and that Lieutenant Holloway was deliberately indifferent to his need for medical attention. (Docket Entry No. 1). The court dismissed Warden Bowers from the action and ordered the remaining defendants to respond to the complaint. (Docket Entry No. 18). The defendants answered the complaint, (Docket Entry No. 22), and then filed a motion for summary judgment supported by extensive exhibits. (Docket Entry No. 27). Martinez has not filed a response, and his time to do so has now expired. Having reviewed the defendants' motion, the record, and the law, the court grants summary judgment in favor of the defendants and dismisses this action. The reasons are explained below.

## I.      Background

Martinez filed his complaint while he was serving a prison sentence for assault on a family member.  *See* TDCJ Inmate Search, https://inamte.tdcj.texas.gov/InmateSearch (visited Mar. 6, 2023).  He alleged that on August 14, 2022, he was called to the lieutenant's office to be served with a disciplinary case.  (Docket Entry No. 1, p. 4).  Sergeant Shinette served him with the disciplinary case, and Sergeants Harris and Hudson, along with several other correctional officers, were there as security.  (*Id.*).  After being served with the disciplinary case, Martinez asked Sergeant Shinette to explain the charge to him, including the date and time of the charge and the name of the officer who wrote it, because he believed it was a duplicate of a case he had already received.  (*Id.* at 4, 8).  Sergeant Shinette told Martinez that the details of the case did not matter. (*Id.*).  Martinez insisted that the details did matter, but Sergeant Shinette refused to answer his questions.  (*Id.*).  Martinez then asked Sergeant Shinette to provide him with blank forms to file a grievance, and she again refused, telling him that she did not have the required forms and that he should return to his cell.  (*Id.*).

When Martinez asked again for grievance forms, Sergeant Harris stood up, grabbed Martinez's right wrist, pulled Martinez's arm back to apply handcuffs, and then punched Martinez in the right cheek with his closed fist.  (*Id.*).  Martinez admitted that the punch made him angry and that he "made [his] body stiff" because he was angry.  (Docket Entry Nos. 1, pp. 4-9; 16, p. 3).  Sergeant Hudson and the other correctional officers then helped Sergeant Harris tackle Martinez and throw him to the ground.  (Docket Entry No. 1, pp. 4, 9).  During the scuffle, Martinez's head slammed on the floor and one of the officers jammed a finger in Martinez's right eye.  (*Id.*).  After Martinez was handcuffed and no longer resisting, Sergeant Harris punched him twice more with a closed fist.  (*Id.*).  Martinez alleged that Sergeant Shinette was in the office and

2

saw Sergeant Harris punch him, but she did nothing to stop the assault.  (*Id.* at 5, 9).  Instead, as soon as the use-of-force officers arrived with a video camera, Sergeant Shinette ordered Sergeants Harris and Hudson to leave the office.  (Docket Entry Nos. 1, pp. 5, 9; 16, p. 11).

Lieutenant Holloway responded to the incident, asking Martinez to complete an Inmate Participant Statement.  (Docket Entry No. 1, p. 5).  She also asked if Martinez needed medical treatment.  (*Id.*).  Martinez alleged that he requested medical attention, but it was never provided.  (*Id.*).  Martinez alleged that he had a bump and bruise on his face and a cut on the inside of his left cheek for over a week after the incident.  (Docket Entry No. 16, p. 4).  He alleged that his eye was red and puffy for about a week and that he had bruises on his wrists for almost three weeks.  (*Id.*).  Martinez alleged that despite multiple requests, he was never provided with medical treatment for his injuries.  (*Id.* at 4-5).

Martinez alleged in his complaint that he filed a Step 1 grievance about the incident on August 26, 2022.  (Docket Entry No. 1, pp. 7, 10-11).  That grievance was returned as "inappropriate."  (*Id.* at 7, 11).  Martinez refiled the Step 1 grievance on August 31, 2022, but it was rejected because Martinez had filed more than one grievance in 7 days.  (*Id.* at 7, 13-14).  Martinez alleged that he filed a Step 2 grievance on September 2, 2022, that was returned to him by the Central Grievance Office on December 30, 2022.  (*Id.* at 7, 12-16).  The Step 2 response indicates that Martinez improperly filed his Step 2 grievance directly with the Central Grievance Office rather than submitting it to his Unit Grievance Investigator.  (*Id.* at 12).

After initial screening of Martinez's complaint under 28 U.S.C. § 1915A(a), the court ordered Sergeant Harris, Sergeant Hudson, Sergeant Shinette, and Lieutenant Holloway to answer the complaint.  (Docket Entry No. 18).  The defendants answered, (Docket Entry No. 22), and then filed a motion for summary judgment supported by several exhibits.  (Docket Entry No. 27).  The

defendants contend that they are entitled to summary judgment because Martinez failed to properly exhaust his administrative remedies before filing this action. (*Id.* at 5-8). In the alternative, the defendants contend that Martinez failed to allege facts showing that he was entitled to relief. (*Id.* at 8-13).

On February 13, 2024, Martinez filed a letter with the court asking for additional time to respond to the defendants' motion. (Docket Entry No. 28). The court granted the motion and ordered Martinez to file his response by March 22, 2024. (Docket Entry No. 29). To date, Martinez has not responded to the defendants' motion.

## II.    The Legal Standards

### A.    Actions Under 42 U.S.C. § 1983

Martinez brings his claims against the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The disputes in this case center on whether the defendants violated Martinez's constitutional rights.

### B.    Summary Judgment

The defendants have filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57

4

(2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

The court considering a motion for summary judgment must view all evidence and draw all inferences "in the light most favorable to the opposing party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380. When both parties have submitted evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995). But if record evidence clearly contradicts the opposing party's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). In addition, the court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Guillot on Behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (cleaned up). In addition, "[s]peculative theories cannot defeat a motion for summary judgment." *Id.* After viewing the evidence in the light most favorable to the nonmoving party,

summary judgment may be granted if the nonmoving party has failed to show that disputed issues of fact exist as to every element essential to his case on which he bears the burden of proof. *See Celotex,* 477 U.S. at 322-23.

### C.    Pleadings from Self-Represented Litigants

Martinez is representing himself, so the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A*., 541 F. App'x 419, 421 (5th Cir. 2013) (per curiam)).  "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

## III.    Discussion

### A.    Failure to Exhaust

The defendants first contend that Martinez's action should be dismissed because he failed to exhaust his administrative remedies before filing the action.  The Prison Litigation Reform Act ("PLRA") bars a prisoner from filing a federal action concerning "prison conditions" until "such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has broadly interpreted the phrase "prison conditions" to include all types of constitutional claims, including excessive force claims. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to

all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to investigate and address complaints internally. *See Porter*, 534 U.S. at 525. Exhaustion of administrative remedies is mandatory, regardless of the forms of relief sought or offered through administrative avenues. *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (the exhaustion language in the PLRA is mandatory and "a court may not excuse a failure to exhaust" regardless of the circumstances). To exhaust administrative remedies, a prisoner must comply with all the policies and procedures applicable to those remedies. *See Woodford*, 548 U.S. at 93-95 (to satisfy the exhaustion requirement of the PLRA, a prisoner must comply with all the agency's procedural rules). A prisoner must exhaust his administrative remedies *before* filing his action, *see Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004), and an action must be dismissed if the prisoner has not properly exhausted all the available remedies before filing suit.

For Texas state inmates, TDCJ has a two-step formal grievance process. In the first step, a prisoner files a Step 1 grievance within fifteen days of the complained-of incident. *Id.* A Step 1 grievance is handled within the prisoner's facility. *Id.* If the prisoner is not satisfied with the Step 1 decision, the prisoner has fifteen days to file a Step 2 grievance, which is handled at the state level. *Id.* Even though the Step 1 and Step 2 grievances are handled by different offices, the instructions printed on the grievance forms instruct inmates that both the Step 1 and Step 2 grievance forms must be filed with the prisoner's Unit Grievance Investigator. (Docket Entry No. 27-1, p. 33).

Martinez alleges that he exhausted the TDCJ grievance process before filing his complaint, and he attached copies of his grievances to his complaint. (Docket Entry No. 1, pp. 10-16). The

7

defendants also filed Martinez's grievance records in support of their motion for summary judgment. (Docket Entry No. 27-1). These records show that Martinez filed a Step 1 grievance concerning this incident on August 26, 2022, alleging that Sergeants Harris and Hudson used excessive force against him on August 14, 2022, and that Sergeant Shinette stood by and did not stop the use of improper use of force. (*Id.* at 21-22). The Step 1 grievance also alleged that Lieutenant Holloway did not ensure that Martinez received medical care for his injuries. (*Id.*). Martinez asked to have Sergeants Harris and Shinette "lose their ranks" and asked to have his G2 classification restored. (*Id.* at 22). This grievance was returned to Martinez marked as "inappropriate," but the form indicated that Martinez could resubmit the grievance when corrections were made. (*Id.*).

On August 31, 2022, Martinez submitted a new Step 1 grievance about the incident, this time asking for an investigation because "ranking officers are supposed to stop [this] from happening." (*Id.* at 23-24). This grievance was returned to Martinez as a "submission in excess of 1 every 7 days." (*Id.* at 24). Martinez then completed a Step 2 grievance form on September 2, 2022. (Docket Entry No. 1, pp. 15-16). But rather than submitting the Step 2 grievance to his Unit Grievance Investigator as required by TDCJ's rules, Martinez mailed his Step 2 grievance directly to the Central Grievance Office. (*Id.* at 12-16). The Step 2 grievance was returned to Martinez on December 30, 2022, indicating that it had been improperly submitted directly to the Central Grievance Office. (*Id.* at 12).

By not following TDCJ's established policies for submitting Step 2 grievances, Martinez did not properly exhaust his administrative remedies. While Martinez alleged that he exhausted his remedies, the record evidence before the court clearly contradicts that allegation. Martinez has failed to show that genuine factual disputes exist material to determining that he failed to exhaust

his available administrative remedies before filing this action. The defendants are therefore entitled to summary judgment in their favor. Martinez's complaint against the defendants must be dismissed for failing to exhaust his administrative remedies.

### B.    Merits.

Even if Martinez had properly exhausted his administrative remedies, his claims against Sergeant Hudson, Sergeant Shinette, and Lieutenant Holloway must be dismissed because Martinez has not carried his burden to show that disputed factual issues exist that are material to these claims. The claims against each defendant are addressed below.

### 1.    Official Capacity Claims

To the extent that Martinez seeks an award of money damages from the defendants in their official capacities, his claims are barred by sovereign immunity. Sovereign immunity bars actions against a state or a state official unless Congress has abrogated the immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Id.* And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App.–Houston [14th Dist.] Aug. 14, 2014, pet. denied) (the Texas Legislature has not waived sovereign immunity for any claim brought under § 1983). In the absence of such a waiver, Martinez's claims against the defendants in their official capacities are barred by the state's sovereign immunity.

The fact that the defendants are state employees, rather than the state itself, does not change this analysis. When a state employee is sued in his or her official capacity, the state is the real

party in interest for the suit.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity").  Martinez's claims for money damages against the defendants in their official capacities are construed as claims against the State of Texas and are barred by sovereign immunity.  These claims are dismissed with prejudice.

### 2.    Individual Capacity Claims

Martinez also seeks damages from each of the defendants in their individual capacities based on his claims against each of them.  These claims are considered in turn.

### a.    Sergeant Harris

Martinez alleges that Sergeant Harris used excessive force by punching him in the face with a closed fist while trying to handcuff him and by punching him again several times while he was already handcuffed and no longer resisting.  (Docket Entry No. 16, pp. 3-4).  To establish a claim for excessive force under the Eighth Amendment, the plaintiff must show that the force used "was not applied in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm."  *Eason v. Holt*, 73 F.3d 600, 601–02 (5th Cir. 1996) (cleaned up) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *see also Cardona v. Taylor*, 828 F. App'x 198, 201 (5th Cir. 2020) (per curiam).  The use of force on a prisoner who is handcuffed and no longer resisting may be considered malicious and sadistic.  *See Cardona,* 828 F. App'x at 201; *see also Brown v. Lippard,* 472 F.3d 384, 386-87 (5th Cir. 2006) (affirming the denial of a motion for summary judgment on an Eighth Amendment excessive force claim when the evidence showed that the prison official continued to strike the inmate after he was handcuffed).  And Sergeant Harris has offered no summary judgment evidence tending to show that his use of force against

Martinez was proper.  Martinez may proceed with the excessive force claim against Sergeant Harris after exhausting his administrative remedies.

### b.    Sergeant Hudson

Martinez also appears to allege an excessive force claim against Sergeant Hudson. Martinez alleges that there was "an office full of [corrections officers] present" when Sergeant Shinette was trying to serve him with the disciplinary case, including Sergeant Hudson.  (Docket Entry No. 16, pp. 2, 9).  But Martinez does not allege any facts showing that Sergeant Hudson used excessive force against him.  (*Id.* at 9).  Instead, in response to the question of whether any corrections officer other than Sergeant Harris acted improperly, Martinez responded "no."  (*Id.*). Because Martinez alleges no facts to show that Sergeant Hudson violated Martinez's constitutional rights, Martinez's claim against Sergeant Hudson is dismissed with prejudice.

### c.    Sergeant Shinette

Martinez alleges that Sergeant Shinette "did not come to [his] defense" when she saw Sergeant Harris punch him after he was handcuffed and no longer resisting.  (Docket Entry No. 16, p. 11).  Sergeant Shinette also heard Martinez request medical attention from Lieutenant Holloway, but she did not ensure that Martinez ever received medical attention.  (*Id.* at 11-12). Construed liberally, these allegations appear to allege claims for bystander liability and deliberate indifference.

#### i.    Bystander Liability

A prison official may violate the Eighth Amendment by failing to take reasonable measures to protect an inmate from another officer's unconstitutional actions under a theory of bystander liability.  *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (discussing *Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995)).  "An officer is liable for failure to intervene when that officer:

(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). But bystander liability "requires more than mere presence in the vicinity of the violation; we also consider whether an officer acquiesced in the alleged constitutional violation." *Id.* (quoting *Whitley*, 726 F.3d at 647). In the context of an excessive force claim, acquiescence may be shown by evidence that the defendant stood by, laughed, and encouraged the use of force. *See Phillips v. Whittington*, No. 20-30731, 2022 WL 797418, at *9 (5th Cir. Mar. 14, 2022) (per curiam) (citing *Hale*, 45 F.3d at 919); *see also Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021) (reversing a summary judgment in favor of officers on a bystander liability claim when the evidence showed the officers were both aware of the use of excessive force and acquiesced to it by making jesting comments). When the evidence shows only that the defendant was generally aware of the use of excessive force but did not actively acquiesce in the violation, the evidence is insufficient to establish bystander liability. *See Joseph*, 981 F.3d at 343 (citing *Westfall*, 903 F.3d at 547).

As explained above, the record evidence tends to show that Sergeant Harris used excessive force against Martinez while Sergeant Shinette was present. But Martinez does not show that disputed factual issues exist concerning whether Sergeant Shinette acquiesced in the use of excessive force. In addition, Martinez does not identify any reasonable measures that Sergeant Shinette could have taken to stop Sergeant Harris's use of excessive force. In the absence of evidence tending to raise a disputed factual issue on these elements, Sergeant Shinette is entitled to summary judgment in her favor on Martinez's claim for bystander liability for Sergeant Harris's use of excessive force. *See, e.g., Soto v. Bautista*, No. 21-40803, 2023 WL 2624785, at *6 (5th

Cir. Mar. 24, 2023) (per curiam) (reversing denial of summary judgment in favor of prison officials on a claim of bystander liability when the evidence showed that neither had a reasonable opportunity to prevent the excessive force from occurring).

### ii.    Deliberate Indifference

In the alternative, Martinez appears to allege that Sergeant Shinette was deliberately indifferent to his need for medical attention.  To show that a prison official was deliberately indifferent, the prisoner "must demonstrate that the official is aware that an 'inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"  *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).  The deliberate indifference standard is "extremely high."  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).  "Deliberate indifference is more than mere negligence or even gross negligence."  *Brown v. Callahan,* 623 F.3d 249, 255 (5th Cir. 2010).  "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference.  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).  Instead, to obtain relief for a constitutional violation based on deliberate indifference, the prisoner must show that the prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (cleaned up).  In addition, deliberate indifference that results in a delay in receiving medical care rises to the level of a constitutional violation only when that delay results in "substantial harm."  *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (quoting *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam)).

13

In this case, Martinez alleges that he asked Lieutenant Holloway to arrange for him to be escorted to the infirmary for treatment of his injuries, and he alleges that Sergeant Shinette overheard this request but never followed up to ensure that he received medical attention. (Docket Entry No. 16, p. 12). He alleges that as a result, he never received any medical treatment for his injuries. (*Id.*). But the summary judgment evidence clearly shows that Martinez was examined by prison medical staff on August 22, 2022, as a result of this incident. (Docket Entry No. 27-2, p. 2). At that time, Martinez denied suffering any injuries in the incident, and no visible injuries were noted. (*Id.*). This evidence clearly contradicts Martinez's allegations that he never received medical treatment, and the court will not credit his unsupported assertion to the contrary. In addition, because the record evidence does not show that Martinez suffered any harm, much less substantial harm, from the alleged delay in receiving medical care, he cannot establish a claim for deliberate indifference against Sergeant Shinette. Sergeant Shinette is entitled to summary judgment in her favor on Martinez's claim for deliberate indifference. The claims against Sergeant Shinette are dismissed, with prejudice.

### d.    Lieutenant Holloway

Martinez alleges that Lieutenant Holloway violated his constitutional rights by being deliberately indifferent to the injuries he suffered during the incident in the office. (Docket Entry No. 16, p. 9-10). He alleges that he told Lieutenant Holloway that he needed medical attention immediately after the incident, and she assured him that he would be escorted to the infirmary in a short time. (*Id.* at 10). Despite this, Martinez alleges that he never received medical care for his injuries. (*Id.* at 10-11).

As explained in connection with Martinez's claim against Sergeant Shinette, to recover on his deliberate indifference claim against Lieutenant Holloway, Martinez must demonstrate that he

suffered a delay in receiving medical treatment that resulted in substantial harm. *See Rogers,* 709 F.3d at 410. But when Martinez was seen by prison medical staff, he denied suffering any injuries in the incident, and no visible injuries were noted. (Docket Entry No. 27-2).

Martinez has not carried his burden to show that disputed factual issues exist material to the question of whether Lieutenant Holloway was deliberately indifferent to his alleged injuries. In addition, the undisputed record evidence shows that Martinez did not suffer any harm, much less substantial harm, from any alleged delay in receiving medical care. Because Martinez has not carried his burden to show that disputed factual issues exist material to his deliberate indifference claim against Lieutenant Holloway, she is entitled to summary judgment in her favor. The claims against her are dismissed, with prejudice.

## IV.  Conclusion

The motion for summary judgment filed by the defendants, (Docket Entry No. 27), is granted. This action is dismissed with prejudice as to Martinez's claims against all defendants in their official capacities and as to defendants Sergeant Will Hudson, Sergeant Shamus M. Shinette, and Lieutenant Christina Holloway in their individual capacities. This action is dismissed without prejudice for failure to exhaust administrative remedies as to defendant Sergeant Elijah Harris in his individual capacity. Any pending motions are denied as moot. Final judgment will be separately entered.

SIGNED on April 19, 2024, at Houston, Texas.

_Lee H. Rosenthal_
_____
Lee H. Rosenthal
United States District Judge